IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TAMEKA TIMMONS,

    PLAINTIFF,

VS.                                                                CIVIL ACTION NO.:

PORTFOLIO RECOVERY
ASSOCIATES, LLC.,

    DEFENDANT                                   JURY TRIAL DEMANDED

## COMPLAINT

**I.   JURISDICTION**

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 29 U.S.C. § 2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

**II.   PARTIES**

2.    Plaintiff Tameka Timmons (hereinafter "Plaintiff" or "Timmons"), is a resident of Birmingham, Jefferson County, Alabama, and performed work for the

Defendant in the counties composing the Northern/Middle/Southern District of Alabama during the events of this case. Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Defendant, Portfolio Recovery Associates, LLC., (hereinafter "Defendant" or "PRA") is a foreign limited liability company doing business in Birmingham, Alabama, and is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5. Defendant hired Plaintiff on or about or about November 18, 2013.

6. Defendant initially employed Plaintiff as an Account Representative.

7. During the employment relationship, PRA promoted Timmons on three separate occasions.

8. Defendant last promoted Plaintiff to the position of Account Executive.

2

9. In each of her positions with PRA, Timmons' primary responsibility was to make collection calls on behalf of various creditors.

10. Defendant terminated Plaintiff's employment on or about November 22, 2016.

11. During the 12-month period prior to February 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

12. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's February 2016 leave.

13. During the week of February 2016, Defendant employed fifty or more employees, worked within 75 miles of its 600 Beacon Parkway, Birmingham, Alabama 35209 location where Plaintiff worked.

14. In February of 2014, Timmons' minor son, was diagnosed with Type I Diabetes and required hospitalization.

15. Since his diagnosis, Timmons' son has required frequent doctor's visits.

16. In February of 2016, Timmons applied for intermittent Family and Medical Leave to care for her son's diabetes.

17. Defendant approved Timmons' application for intermittent Family and Medical Leave to care for her son's diabetes.

18. After Timmons was granted the leave, she took leave on an intermittent basis until the time of her termination.

19. Defendant terminated Plaintiff's employment for the stated reason of violating Defendant's cell phone policy.

## IV.    COUNT TWO - FMLA RETALIATION

20. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 19 above as if fully set forth herein.

21. During the 12-month period prior to February 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

22. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's February 2016 leave.

23. During the week of February 2016, Defendant employed fifty or more employees, worked within 75 miles of its 600 Beacon Parkway, Birmingham, Alabama 35209 location where Plaintiff worked.

24. Defendant employed at least fifty (50) persons for each working day

4

during each of 20 or more calendar workweeks in the current or preceding calendar year.

25. Plaintiff provided notice of her need for intermittent FMLA leave on or about February 2016.

26. Plaintiff provided notice of her need for FMLA leave to Camille Broadnax, Human Resource Manager.

27. PRA maintains a compensation scheme that provides bonuses based on the amount of money an employee collects from debtors.

28. Under PRA's compensation scheme, Defendant assigned a monthly production goal to each employee.

29. PRA paid its employees bonuses that increase based on how much the employee exceeded his or her assigned goals.

30. All of Timmons' performance appraisals exceeded expectations.

31. Because of her good performance, Defendant consistently issued Timmons bonuses and salary increases.

32. According to PRA's Employee Handbook, Timmons was entitled to a downward adjustment to her production goals because she was taking FMLA leave.

33. Despite this policy, PRA did not initially adjust Timmons' goal.

34. Defendant's failure to adhere to its own policy and adjust Timmons' goal resulted in a lower bonus payment for each of the months that she took intermittent leave.

35. In April of 2016, Timmons complained to Bethany Hale, Operations Manager, about how the production goals were being improperly applied.

36. In June of 2016, Timmons complained to Stephanie Caldwell in Human Resources about how the bonus structure was being applied to people who were on FMLA.

37. In October 2016, Timmons complained to James Whitfield about how the bonus structure was being applied to her because of her FMLA leave.

38. During the conversation, Timmons expressed that her pay was incorrect because she had not been given proper credit for the reduction in hours that was due to her FMLA leave.

39. After the conversation, PRA finally changed the bonus structure to comply with PRA's stated policy concerning production goals but refused to tell Timmons what her production goal would be until after the month was completed.

40. On or about November 21, 2016, Timmons arrived to work as scheduled and worked approximately four hours of her workday until James Whitfield told her that Camille Broadnax, HR Manager, was looking for her.

41. Timmons reported to a meeting with Broadnax and Whitfield.

42. During the meeting, Broadnax asked Timmons about the origin of a picture of her that had been uploaded to the Company's Workday App.

43. Broadnax asked to know where the picture had come from.

44. Timmons responded that the picture was over a year old and she wasn't sure of the exact circumstances under which it was taken.

45. Thereafter Broadnax suspended Timmons and sent her home pending an investigation of the origin of the photo.

46. The next day Timmons heard from co-workers that she had been terminated.

47. Timmons then called Whitfield and confirmed that Defendant terminated her employment.

48. PRA has a cell phone policy.

49. Under the PRA cell phone policy, the first instance of a cell phone use on the floor will result a suspension for the remainder of the workday.

7

50. Under the PRA cell phone policy, the second instance of cell phone use on the floor is termination within a six-month period will result in termination.

51. Prior to her termination, PRA had never disciplined Timmons for a cell phone violation.

52. Other employees, who were not taking FMLA, were caught with a cell phone on the floor but were not terminated.

53. Defendant terminated Plaintiff's employment

54. Defendant's (Position), James Whitfield informed Plaintiff that Defendant terminated her employment.

55. Whitfield and Broadnax each had knowledge that Plaintiff exercised her FMLA rights and that she complained to him regarding Defendant's bonus structure interfering with her FMLA rights.

56. As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its

agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family Medical Leave Act;

    B.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

    C.    Award Plaintiff back pay, together with employment benefits, liquidated damages, attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.

/s/ Kira Fonteneau
Kira Fonteneau
Kira@fonteneauarnold.com

/s/ Allen D. Arnold
Allen D. Arnold
allen@fonteneauarnold.com

OF COUNSEL:

**Fonteneau & Arnold LLC**
2151 Highland Avenue South, Suite 205
Birmingham, AL 35205
T: (205) 252-1550
F: (205) 502-4476

9

PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY.

_____
Of Counsel


**SERVE DEFENDANT AT**:
Portfolio Recovery Associates, LLC
140 Corporate Blvd
Norfolk, VA 23502